ALBERT A. BUSHEE, APPELLEE, V. WILLIAM L. KELLER, APPELLANT.

FILED SEPTEMBER 26, 1914. No. 17,813.

1. **Vendor and Purchaser:** CONTRACT: ANNULMENT: MISREPRESENTATIONS. Where an executory contract for the purchase or exchange of real property at a distance is made, and one of the parties makes and the other party relies upon a detailed description of the property disposed of, which the seller guarantees, material misrepresentations of facts affecting the value are sufficient to warrant a court of equity in setting aside the contract at the suit of the party deceived.

2. **Injunction:** VENUE: NOTES IN ESCROW. Where part of the relief sought is to enjoin the delivery or disposal of certain notes of the plaintiff given in part payment of the property, such an action may properly be brought in the county where such notes are held in escrow, and a summons may be sent to another county for service.

APPEAL from the district court for Adams county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*Warren Pratt* and *Tibbets. Morey & Fuller*, for appellant.

*M. A. Hartigan* and *J. A. Gardiner, contra.*

LETTON, J.

In December, 1910, plaintiff and defendant entered into an executory contract of exchange of real estate. Before the date of final execution arrived, plaintiff brought this action to restrain the delivery of certain notes executed by him and placed in escrow with the defendant bank, and to rescind and set aside the contract on the ground of misrepresentations and breach of certain warranties made by defendant. He prevailed in the action, and defendant has appealed.

The plaintiff owned a large tract of land in Lincoln county, Nebraska, for which he employed one Vermillion, a real estate agent, to procure him a purchaser. Vermillion communicated this fact to one Foley, who knew that defendant Keller owned certain property in Kearney, Nebraska, and in Kansas City, Missouri, which he desired to dispose of. Foley procured from Keller a letter giving a description of the Kansas City property, the contents of which were communicated to the plaintiff. After Keller was informed that perhaps an exchange might be effected, he went to look at the Lincoln county land. Afterwards Foley, Vermillion, Keller and plaintiff met at Hastings, Nebraska. An exchange of property was agreed to upon the following terms: Keller agreed to sell and convey his property at a valuation of $26,500, subject to a mortgage of $4,500, and Bushee agreed to pay for the same by conveying to Keller the Lincoln county land subject to a mortgage of $6,500, by paying $1,000 in cash, by giving a note for $600, due March 1, 1911, by paying $2,500 on March 1, 1911, and by giving a note signed by himself and wife for $2,400, due March 1, 1911. During the negotiations it was suggested by Vermillion that the letter from Keller to Foley describing the property should be made a part of the contract, since Bushee was trading for it upon the representations made by Keller in the letter. To this Keller objected, but, instead, inserted in the contract the following guaranty (omitting non-essentials): "Party of

96 Neb. 47

the first part guarantees Kansas City property as set forth on back of this contract."

"Hastings, Neb., December 27, 1910.

"DESCRIPTION OF KANSAS CITY, MISSOURI, PROPERTY.

"House, 16 rooms, two-story, modern, brick, with slate roof, large brick barn with living rooms upstairs.   *   *   * Three blocks from Convention Hall, five and one-half blocks from Baltimore Hotel, about eight blocks from the proposed new Union Depot, and about three blocks from the new viaduct on Twelfth street, which the city has voted to put in soon.   *   *   * Twelfth street has business clear out to Washington street, which is only one block from Penn. ave.   My property is surrounded by good substantial buildings, all fine properties, such as hotels, business, apartment houses, etc., of the better class.
                              "William L. Keller."

The contract was then executed, the $1000 in cash paid, the note for $600 executed and delivered to Keller, who delivered it to Foley, and the note for $2,400 deposited in escrow with W. A. Taylor, cashier of the First National Bank of Hastings, to be delivered to Keller upon the final execution of the contract. Bushee then went to Kansas City to see the property. On his return this action was begun. The action was brought in Adams county, where the defendant Bank is situated and where Taylor and Foley live. Service was had upon them there, and was obtained upon Keller in Buffalo county.

Defendant's first contention is that the district court for Adams county has no jurisdiction, for the reason that neither the bank, Taylor, nor Foley were necessary or proper parties to the action, and therefore no authority was conferred to send a summons out of the county. One of the objects of the suit being to prevent the delivery of the notes in the hands of the bank and Foley, they were necessary and proper parties in order to afford a complete and adequate remedy.

The claim that plaintiff is not entitled to relief because he does not come into court with clean hands for the reason that he fixed an excessive price upon the Lincoln county land is not well founded. There is no proof that any false statements were made as to the quality of the land, or any device used in order to deceive defendant.

The principal question in the case is whether the evidence justified the district court in allowing the contract to be rescinded. Several of the matters as to which the petition alleges misrepresentations were made were shown by the evidence to comply strictly with the guaranty. There are, however, several important particulars in which the property does not conform to the description given. It was understood by all that Bushee intended to rely upon the written statements, and did not design making a personal examination of the property before the contract was signed. This he had a right to do, and, if the representations upon which he relied were untrue with respect to any material matter, he is entitled to rescind the contract and have the aid of a court of equity to place him in the same situation as he was before he was misled. The Kansas City property was represented to be a house with 16 rooms. The proof is that the house contains five rooms and a reception hall on the first floor, five rooms, an alcove and a bathroom on the second floor, and two rooms and a dark storage room or closet on the attic floor. If the hall, alcove, bathroom and dark attic room are counted, there are 16 rooms in the house, but it is shown that such apartments (except perhaps the hall) are not usually considered as rooms in describing the capacity of a dwelling house. The barn was described as a "large brick barn." The evidence shows that it is a frame building veneered with brick, and that it was of ordinary size for such a dwelling. Furthermore, the property is 15 blocks from the entrance to the new Union Depot, instead of 8 blocks. This, according to the testimony, seriously affects its value. The statement that "my property is surrounded by good substantial buildings, all fine properties, such as hotels, business, apartment houses, etc., of the better class," also

is unsupported by the facts in evidence. The property does not correspond with the representations, and we think the evidence justifies the rescission of the contract.

The judgment of the district court is

AFFIRMED.